# M. T. McGILVRA v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY, a Corporation.

## (159 N. W. 854.)

**Prairie fire — railway engine — evidence — prima facie proof.**

1. Evidence examined and held to furnish prima facie proof that a prairie fire had been started by a railway engine.

**Statutes — application of — proof — execution of instruments — record of — evidence — rules of.**

2. Sections 5569, 5571, and 5572 of the Compiled Laws of 1913 were merely intended to be applicable to proof before the registers of deeds, where unacknowledged instruments are sought to be recorded and in other instances, and, when deeds and leases are sought to be proved, the general rules of evidence apply.

**Lease — signature — witness — proof of execution — evidence.**

3. Proof that a witness knows the signature of the alleged maker of a lease, and knows that it is his signature that is on the instrument, constitutes prima facie proof of the execution of such instrument, and will entitle it to be introduced in evidence.

**Title to lands — record — trustee — lease from — possession under — damages — evidence — prima facie case — collateral attack.**

4. Where the record title to land is in "B, trustee," one who holds possession of such land under a lease from such trustee is prima facie entitled to recover damages for the negligent burning of the hay thereon, and as against a collateral attack on such lease, even though there is no proof of the authority of such trustee to execute the same.

---

Note.—Whether the presumption of negligence arising from the fact that a fire was set by the railroad company's engine necessarily makes the question of negligence one for the jury is discussed in a note in 5 L.R.A.(N.S.) 99.

That the measure of damages for destruction of immature growing crops is their value at the time of their destruction is set forth in notes in 12 L.R.A.(N.S.) 267; 27 L.R.A.(N.S.) 168; 37 L.R.A.(N.S.) 976; and 49 L.R.A.(N.S.) 415, on the measure of damages for injury to, or destruction of, growing crops.

On the liability of a railroad company for setting fire which spread to property of others, see note in 21 L.R.A. 262. Also see notes in 38 Am. Dec. 70; 78 Am. Dec. 185; and 6 Am. Rep. 597,—on the liability of railroad company for fires set by its locomotives.

**Prairie fire — lands injured by — soil — burning and scorching — proof — evidence — what is.**

5. Where certain land is injured by a prairie fire and the nature and extent of the scorching or burning of the soil is capable of direct proof, evidence is not admissible as to the injuries which have been occasioned by other fires to other lands at other times, the test being the injury to and the effect on the particular land in question.

**Article — market price — property of same kind — purchase and sale — subject of — proof — trade — ordinary course of.**

6. In order that an article may be said to have a market price, it must be shown that other property of the same kind was the subject of purchase or sale in so many instances that the value became in a measure fixed by a consensus of buyers and sellers in the ordinary course of trade.

**Prairie fire — hay — destroyed by — reasonable value — recovery of — value — local market — nearest market — transportation — cost of — uses for which property is kept.**

7. Where hay is destroyed by a prairie fire the owner is entitled to recover its reasonable value at the place where and at the time when destroyed, and for the uses and purposes to which it could be reasonably applied. Where there is a fixed local market value, that value usually prevails. Where, however, there is no local market, the value at the nearest market usually prevails, but to this must be added the cost of transportation if the hay is kept for use merely, and from this the cost of transportation will be deducted if it is kept for sale. Where no market price prevails, or the market price is clearly inadequate, a liberal rule of proof obtains; and evidence may be introduced of the prices paid at occasional sales and of the uses for which the hay was kept and adapted as well as of the cost of production.

**Hay — value of — farmer — competent to testify — own land — market value — proof of — absence of.**

8. A farmer is competent to testify as to the value of hay which is grown upon his own land, and this even in the absence of proof of a market for the same.

**Instructions — witnesses — equally credible — means of information — weight of testimony — credit to be given.**

9. An instruction to the effect that "when witnesses are otherwise equally credible greater weight and credit should be given to those whose means of information are superior and also to those who swear affirmatively to a fact, rather than to those who swear negatively, or to a want of knowledge or want of recollection, is criticised, but held not to constitute reversible error.

**Instruction — one witness — testimony of — credibility — means of knowledge — weight of — comparison — other witnesses — corroboration — circumstances.**

10. An instruction to the effect that "I instruct you further that the testimony of one credible witness is entitled to more weight than the testimony of many others, if as to those other witnesses the jury have reason to believe, and believe from the evidence and all the facts before them, that such witnesses are mistaken or have knowingly testified untruthfully, and are not corroborated by other credible witnesses or by circumstances proved in the case, merely states a self-evident fact, and is not erroneous in not being confined to material matters, as it can only be construed to relate to particular matters concerning which the witness has testified and concerning which the jury believes that other witnesses have testified untruthfully, and does not pretend to be an instruction on the credibility of witnesses generally.

Opinion filed October 24, 1916.

Action to recover damages for injury occasioned by a prairie fire. Appeal from the District Court of McIntosh County, *Frank Allen,* J. Judgment for plaintiff. Defendant appeals.

Affirmed upon condition.

*Lee Combs* and *L. S. B. Ritchie,* for appellant.

At common law unattested instruments were only admissible in evidence when the exhibit was proved by someone who was present and saw the execution, or by testimony or admission of the person signing same, or by testimony of someone familiar with the handwriting of the maker. 17 Cyc. 155, 442.

In proving value of personal property, "one who has merely heard of sales is not thereby qualified." Thompson v. Moiles, 46 Mich. 42, 8 N. W. 577; Michael v. Crescent Pipe Line Co. 159 Pa. 99, 28 Atl. 204.

A witness who bases his evidence as to the value of land upon what he has heard others say about it, or about the purchase and sale of it, is not qualified. Oregon R. & Nav. Co. v. Eastlack, 54 Or. 196, 102 Pac. 1011, 20 Ann. Cas. 692.

"Opinion or expert evidence is not admissible to show the effect of fire upon grass upon prairie land, since the effect of a fire is susceptible of direct proof." Gates v. Chicago & A. R. Co. 44 Mo. App. 488; Wesson v. Washburn Iron Co. 13 Allen, 95, 90 Am. Dec. 181.

Where a verdict is based upon speculative or conjectural evidence, it will be set aside. Spicer v. Northern P. R. Co. 21 N. D. 61, 128 N. W. 302; Minneapolis Sash & Door Co. v. Great Northern R. Co. 83 Minn. 370, 86 N. W. 451; 33 Cyc. 1396; Smith v. Northern P. R. Co. 3 N. D. 17, 53 N. W. 173.

The correct rule of damages in this state in such cases is the difference between the value of land before and after the fire has passed over it, where the owner of the land bring suit. Cleveland School Dist. v. Great Northern R. Co. 20 N. D. 124, 28 L.R.A.(N.S.) 757, 126 N. W. 995.

For rented land, the measure would be the rental value. Quinn v. Chicago, M. & St. P. R. Co. 23 S. D. 126, 22 L.R.A.(N.S.) 789, 120 N. W. 884.

The instructions of the trial court ignore the rule requiring the limitation of such instructions to the testimony of the witness or witnesses upon material matters in the case. Schnase v. Goetz, 18 N. D. 594, 120 N. W. 553; McPherrin v. Jones, 5 N. D. 261, 65 N. W. 685; Remington v. Geiszler, 30 N. D. 346, 152 N. W. 661.

*G. M. Gannon,* for respondent.

It is now generally held that a sufficient foundation has been laid by the testimony of a witness who has had correspondence with the person or firm whose signature is sought to be proved, and that the signature in question corresponds with that on the correspondence to entitle such witness to testify, and that such proof, prima facie, entitles the instrument to be received in evidence. Abbott, Civil Jury Trials, p. 442, § 25; Murray v. Walker, 83 Iowa, 202, 48 N. W. 1078; Rogers v. Ritter, 12 Wall. 317, 20 L. ed. 417; 17 Cyc. 155, 428.

Proof of possession of real property is prima facie proof of title, and is all that is required to maintain an action for trespass. Comp. Laws 1913, §§ 2799, 7936; 4 Sutherland, Damages, 3d ed. §§ 1009–1012; Ross v. Lawson, 105 Ala. 351, 16 So. 890; Smith ex dem. Teller v. Lorrillard, 10 Johns. 338; Jackson ex dem. Murray v. Denn, 5 Cow. 200.

The doctrine that possession, actual or constructive, is all that is necessary to maintain the action of trespass, is elementary. 38 Cyc. 1004; Abbott, Trial Ev. 2d ed. 801, 802, chap. 37; Wigmore, Ev. § 2515; 4 Sutherland, Damages, 3d ed. p. 2955.

In an action against a railroad company for damages from fire, evidence that the locality was uninhabited and that the fire was discovered in dry grass soon after the locomotive had passed, and which fairly negatives other causes, held sufficient to sustain a finding that the fire was set by the locomotive. W. H. Ferrell & Co. v. Great Northern R. Co. 114 Minn. 531, 131 N. W. 1135.

Where testimony is conflicting the issue is for the jury. 8 R. C. L. 48.

The measure of damages for the destruction of a valuable commodity for which there is a regular and constant demand is ordinarily the market price at the place where it was destroyed; but when there is no such market, the market price at other places, with cost of transportation, may be shown. Allen v. Chicago & N. W. R. Co. 145 Wis. 263, 129 N. W. 1094.

Bruce, J. This is an action to recover damages for the destruction of hay and injury to real estate by reason of a fire claimed to have been set by the defendant's engine at a point about 3 miles southeast of the town of Wishek, in McIntosh county. A judgment for $750.08 was entered for the plaintiff, and against the defendant, and the defendant appeals. This opinion is written after a rehearing.

Appellant first contends there was no evidence to go to the jury on the question as to whether the defendant caused the fire. All of the evidence that there is upon the subject is that *a passenger upon a train of the defendant company saw a fire start up at some distance from the railroad track as the train passed.* He said that he did not know whether the fire started from the right of way or not. He, however, said that he saw nobody around the place, that the fire was on the east side of the track, and that he thought the wind was from the west.

In addition to this was the testimony of the plaintiff, that he had followed the trail of the fire to a point near defendant's right of way, but that he could not tell just where it started, as it appeared to have burned in all directions. There is other testimony that the wind was from the northwest and that the track was to the west of the place of the fire.

Meager though this evidence is, we think it was sufficient. Many a man indeed has been hung on circumstantial evidence which was much weaker than that which is before us. The fire started near the railroad

track and on the open prairie. No human beings seem to have been in the neighborhood except the occupants of the train. There is no proof that there was any fire communicating agency in the neighborhood but the engine. The grass was dry and the wind was blowing towards it from the track. The fire seems to have started up almost immediately after the engine had passed the spot. There is no evidence that it was seen before the engine had passed. A prima facie case as to the origin of the fire was certainly made by the plaintiff, and this case was in no way rebutted or disproved. Babcock v. Canadian Northern R. Co. 117 Minn. 434, 136 N. W. 275, Ann. Cas. 1913D, 924.

We are not unmindful of the case of Smith v. Northern P. R. Co. 3 N. D. 17, 53 N. W. 173, on which counsel for the defendant lays much stress in his brief and argument. That case, however, is not in point. It was handed down prior to the enactment of § 4654, Compiled Laws of 1913, which makes railway companies liable for the fires which are started by their engines, irrespective of the question of negligence. It was, therefore, necessary in that case to prove negligence in the operation of the engine or in its equipment. All that the court held was that the mere fact that a fire started 118 feet from the engine was not itself sufficient proof of such negligence, or of the lack of a proper equipment. It was admitted that the fire was started by the engine, and the question of its origin was not involved or discussed. Here the question before us is a question of origin, and not of negligence.

The next point raised is that the plaintiff failed to offer any competent proof of his ownership of the east half of section 1, township 131, range 71, and thus to lay a foundation for the recovery of damages for the destruction of the hay upon said land. It is claimed that his evidence consists merely of a certain agreement which purported to have been signed by John T. Bressler, trustee, and by the plaintiff, and which declared that the said McGilvra had rented the land for the year 1914, and had agreed to pay $40 "for the use of the above land for hay and pasture purposes for the season of 1914, and thereafter for five years at the same rate, payable in advance, with the privilege to fence the land and remove the same in case the land is sold. This lease made subject to the sale of the land at any time, and may be canceled on date of the sale of the land, and the rental pro rated to that date." It is argued that all the proof that there is of the making of this instrument is the

testimony of the witness Gannon, who testified that he was acquainted with the signature of John T. Bressler, and that the signature on the contract was his. It is argued that § 5569 of the Compiled Laws of 1913 provides that "proof of the execution of an instrument, when not acknowledged, may be made either (1) by the party executing it, or either of them; or, (2) by a subscribing witness; or, (3) by other witnesses mentioned in §§ 5019 and 5020,"—and that §§ 5019 and 5020, Revised Codes of 1905 (being §§ 5571 and 5572, Comp. Laws 1913), merely provide for proof of the execution by proof of the handwriting of the party and of a subscribing witness, and then only:

1. "When the parties and all the subscribing witnesses are dead; or,

2. When the parties and all the subscribing witnesses are nonresidents of the state; or,

3. When the place of their residence is unknown to the party desiring the proof, and cannot be ascertained by the exercise of due diligence; or,

4. When the subscribing witness conceals himself, or cannot be found by the officer by the exercise of due diligence in attempting to serve a subpœna or attachment; or,

5. In case of the continued failure or refusal of the witness to testify for the space of one hour after his appearance."

None of these elements were present in the case which is before us, and the question is whether the statutes in question are applicable in the case at bar, and whether the mere identification of the signature of Bressler and by one not a subscribing witness, was sufficient.

It is clear to us that §§ 5569, 5571, and 5572 of the Compiled Laws of 1913, were merely intended to be applicable to proof before the registers of deeds when unacknowledged instruments are sought to be recorded, and that in other instances the general rules as to proof will apply.

The witness Gannon testified that he knew the signature of Bressler, and that it was his signature that was on the instrument. It is true that he did not testify that he saw Bressler write his name, or that the signature was genuine. The latter fact, however, was of course implied, and in addition to this there was evidence of acts of possession on the part of the plaintiff. A prima facie case, therefore, was certainly established. Jones, Ev. 2d ed. § 526; Pullen v. Hutchinson, 25 Me.

249; Mosher v. Farmers' & M. Nat. Bank, 51 Neb. 55, 70 N. W. 540; Egan v. Murray, 80 Iowa, 180, 45 N. W. 563; Moody v. Rowell, 17 Pick. 490, 28 Am. Dec. 317.

Nor is there any merit in the contention that there is no proof of the authority of the trustee to execute the lease in question. The evidence shows that the title to the land was in John Bressler, trustee, that the lease was executed by John T. Bressler, trustee, and that the plaintiff was occupying the land at the time of the fire. Section 7936 provides that "there shall be a disputable presumption of ownership from possession and from exercising acts of ownership," and § 2799 of the Compiled Laws of 1913 provides that, "in any action instituted in any court to recover damages under the provisions of the foregoing section, it shall not be necessary for the person injured by such fire to allege or prove on the trial of such action, title to the real property over which such fire has spread, but it shall be sufficient in any such action to allege and prove that the person so injured was in the occupancy or possession of such ranch, building, improvement, fencing, timber, or other property, claiming the right to and occupying with cattle any such cattle range, it being the purpose and intention to protect the possession as aforesaid, whether such person has title to such land or not."

Under these provisions the plaintiff was the ostensible owner of the premises, and, without further proof than the mere fact of occupancy, would prima facie be entitled to damages for the loss of his hay.

We now come to the question of the measure of damages, and are called upon to scrutinize the following instructions:

"The court instructs the jury that the measure of damages in cases of this kind is the value of the property at the time and place where it was destroyed, and the jury have the right to arrive at this value from the testimony of the witnesses and other facts and circumstances as disclosed by the evidence; and of the weight and credibility of the witnesses, the jury are the sole judges. In other words, the plaintiff is entitled to recover just compensation in money for the property destroyed, such an amount as will fully restore him to the same property status that he occupied before the destruction. To arrive at the amount of such compensation, inquiry is necessarily confined strictly to the ascertainment of the value of the property destroyed at the time and place of the destruction thereof, and in this connection I instruct you

that whenever there is a well-known or fixed market price for any property, the value of which is in controversy, it is proper, in establishing the value, to take into consideration such market value; but in order to say of a thing that it has a market value, it is necessary that there shall be a market for such commodity, *i. e.*, a demand therefor, and ability from such demand to sell the same when the sale thereof is desired. Where, therefore, there is no demand for a thing,—no demand to sell the same,—then it cannot be said to have a market value at the time when and at a place where there is no market for the same."

"Therefore, if you find from the evidence that there was at the time of the destruction of the property in question a well-known or fixed market price for the same, then the measure of damages, or, in other words, the amount which the plaintiff is entitled to recover for the destruction of the property, provided you find defendant liable, is its reasonable market value at the time and place it was burned. But I instruct you that the rule as to such only requires a strict limitation as to the market value in cases where such value would be the fairest and the best measure of damages and is ascertainable. What the law requires is certainty as far as possible and an absence of speculation. It does not, however, require the impossible or the unreasonable."

"On the other hand, gentlemen, if you find from the evidence that there was no market value of the property in question at the time and place of the destruction thereof, then it is your duty in arriving at the true value of the said property at the time and place of the destruction, to take into consideration all the facts and circumstances disclosed by the evidence bearing upon that question, and in such case you have a right to consider what it would cost the plaintiff to replace the property, and in this connection I instruct you, gentlemen, that the owner of personal property may himself testify as to its value, and you have a right to consider such testimony in connection with all of the other testimony introduced here and in connection with all of the facts and circumstances disclosed by the evidence.

"The ultimate question in determining the value of the property in question is, What was it worth at the time and place of the fire? and all I have said upon this question of damages has been said to you with a view to assisting you in determining the answer to this question, What was the personal property in question worth at the time of the fire?

and I instruct you that all that I have said in regard to the measure of damages for the personal property destroyed must be confined to your consideration of the value of the personal property destroyed, and must not be considered by you when you consider the damage done to the real property, if any such damage is disclosed by the evidence in this case, and I instruct you that you are the sole judges in determining what the personal property in question was worth at the time and place of its destruction."

Counsel for appellant insists that the foregoing instructions authorize the jury to give a speculative estimate of the value of the hay burned, and were, therefore, improper. He alleges that it was established that there was a market for hay in the community, and that the market price as testified to should control.

Although we at first entertained a different opinion, we are now satisfied that under the peculiar circumstances of the case this instruction was correct, and that the defendant has no ground for complaint.

After a careful perusal of the evidence, indeed, we are satisfied that though some of the witnesses state, as a matter of opinion, that there was a local market, the evidence shows conclusively, and in fact is undisputed, that there was none. It discloses a situation where, with one exception, the farmers put up hay for themselves alone and sold only in case of a surplus, and which seems rarely to have been the case. The fact that one or two persons at about the time of the fire were able to find and to buy hay of the kind destroyed is no sufficient proof of a steady market or supply, nor of a market price. In order that there may be said to have been a market price which was controlling in the matter, "other property of the same kind must have been the subject of purchase or sale to so great an extent and in so many instances that the value becomes in a measure fixed. Sloan v. Baird, 162 N. Y. 327, 56 N. E. 752. The market price of an article is "the *usual* standard for measuring its value, and is the sum fixed by the consensus of buyers and sellers." 3 Words & Phrases, 2d ed. 300, 1st ed. vol. 5, 4382. It is the "current price." Century Dict. It is "a price established by public sales *in the way of ordinary business.*" Bouvier's Law Dict. It is "the price at which they are freely offered in the market to all the world; such prices as dealers in the goods are willing to receive and purchasers are made to pay, when the goods are bought and sold *in the*

*ordinary course of trade.*" Glasgow Steam Shipping Co. v. Tweedie Trading Co. 154 Fed. 84; Cliquot's Champagne, 3 Wall. 114, 125, 18 L. ed. 116.

There is no sufficient evidence in the case at bar of such a local market.

The witness Chris Grueble testified that the value of hay around Danzig about the 1st of November was about 5 or 6 dollars a ton. He testified, however, to no sales and to no market, and, as a matter of fact, it is questionable whether his testimony was admissible at all.

The witness Louis Rubin testified that he was familiar with the buying and selling of hay around Danzig.

Q. Do you know whether there was any steady market for hay around Danzig?

A. Not that I know of. People will put up hay for their own use, and if they got any too much, then they sell, but there is not any for to sell whatever, that I know of. I sold some up there about a month and a half ago. I got for it, I believe, about $6 a ton.

This testimony was inadmissible as far as the sale was concerned, as it occurred a month and a half before the trial, and not at the time of the fire. It, however, did show that there was no steady market even around Danzig, and that people merely put up hay for their own use and sold what they had over.

The witness Phillip Hypel testified that he lived 2½ miles from Venturia, and (in answer to a leading question) that there was a market for hay in the community on the 9th of November, 1914; that at that time he sold some prairie and slough hay mixed; that its fair market value was $3 a ton, but he didn't know of any other sales.

Q. Do you know of any place you can haul your hay to and immediately dispose of it at a fixed price?

A. Oh yes, in Wishek I got it last fall about November 1st. I could get $5 a ton for it in Wishek.

He testified, however, that this hay was sold before he had put it up, so that the price must have been fixed early in the year and before the time of the fire.

The witness Conrad Kogler testified that he lived 6 miles from Wishek

and a mile and a half from the land; that he didn't know whether prairie hay had any market price; that he didn't know of any sales in November; that he bought some after the fire and on the 10th of November for $3 a ton 5 miles south of his place; that the hay was worth $3 a ton; that he didn't know of any hay that was sold except that which was sold to McGilvra; that he had to haul the hay which he bought to his place; that he didn't know of anybody else who had hay to sell except Geidt, but he put up hay just for that purpose.

The witness Christoph Hiller testified that he lived near McGilvra's; that he saw some of the stack; that that kind of hay had a market value in the community on or about the 9th day of November in the stack; that as far as he knew his neighbors sold some for $2.50 a ton; that the hay was worth $3 a ton in the stack; that after the fire that about three weeks before (that is before the trial) McGilvra told him that he had bought some hay. "I wouldn't say for sure, for $4 or $4.50 for the load, and he said the load contained two tons;" that the hay was not really slough hay, but it was hay from low ground; that he estimated there was a ton and a half on the rack and he said over 2 tons.

The witness John Kogler testified that he lived about a mile from the land in question; that there was no market for hay like that burned on or about the 9th of November, 1914; that he knew of some sales that were made about that time, but after the fire he bought some hay for $3 a ton, but he didn't know what was its value at the time and place; that the hay was worth $3 in the stack. The only sale, however, that he refers to and on which he seems to base his testimony, was that which was bought by his father, Conrad Kogler.

The witness Ed Christy testified that the prairie hay had a market value on November 9th.

Q. Do you know what it was worth, what it could be bought for?

A. No I don't know.

Q. Tell us whether you know that the hay was worth any particular price in that community.

A. I don't know.

Q. I am asking you now what hay was worth in that community last fall on or about the 9th of November in the stack.

A. Three dollars a ton.

I know where I could have bought it for that. I don't know of anything sold for that price.

This testimony showed no local market and no local market value.

All of the definitions presuppose a consensus of buyers and sellers, a current price and numerous sales, and there is no proof that these elements were present in the farming community even if they were present at Danzig or Wishek, and of which we have some question.

Even if there was a market at Wishek or Danzig, there is no lower price testified to at these places than $5 a ton, and since there was no local market and the plaintiff was entitled to have the hay replaced where burned or its value at that place, the measure of damages would be, not the market price at Wishek or Danzig, but that market price plus the cost of transportation to the place of the fire or the community value, and since the jury returned a verdict of $5 a ton it is quite clear that they were not induced by anything that was said in the instructions to render their verdict for any greater sum than the price that was paid at the place mentioned. But be this as it may, we are satisfied of the correctness of the instructions and their applicability to the case at bar. There was no local market, and the existence of a market, even at Danzig or Wishek, was a matter of some doubt and was for the jury to pass upon. There is no claim or evidence that the plaintiff's hay was kept merely for purposes of sale. He was entitled to have it replaced where it was destroyed, or rather to be paid its value at that place, its actual replacing being impossible. There being no fixed or local value, and even though there was a market value at Danzig and Wishek, this value would not necessarily control as the places were at least 5 miles distant, and the plaintiff was entitled to the reasonable value of his hay at the time and place of its destruction, and for the uses to which he was putting it or might reasonably have put it. 33 Cyc. 1391.

In all of such cases a liberal rule of proof prevails, and proof of the prices which had been paid both in the immediate neighborhood and at Wishek and Danzig would be competent as tending to show the real value. Texas & P. R. Co. v. Prude, 39 Tex. Civ. App. 144, 86 S. W. 1046; Galveston, H. & S. A. R. Co. v. Rheiner, — Tex. Civ. App. —, 25 S. W. 971. Under this condition of the facts and of the evidence it was perfectly proper for the court to instruct the jury that the market

value would only be controlling where such value would be the fairest and best measure of damages, and that they could take into consideration all of the facts and circumstances disclosed by the evidence and bearing upon the question, and that the market value would in no event be controlling, and that the prices actually paid would in no event be controlling, unless they were paid in a market where there was a demand for the commodity, and an ability to sell, and a well-known or fixed price.

The defendant could in no event have been prejudiced by the instructions. If market there was, it must have been at Danzig, or at Wishek, and there the lowest price was $5 a ton, which amount the jury held to be the value of the hay.

Nor can it be said that, outside of this price which was paid at the points mentioned, there was no evidence of the value. The plaintiff testified that the hay was worth $6 a ton, and it is established that he, as the owner, was competent to so testify. See Seckerson v. Sinclair, 24 N. D. 625, 100 N. W. 239; Texas & P. R. Co. v. Prude, and Galveston, H. & S. A. R. Co. v. Rheiner, supra.

But the defendant further excepts to the instruction of the trial court wherein he charged the jury that "when witnesses are otherwise equally credible, and their testimony otherwise equally entitled to equal weight, greater weight and credit should be given to those whose means of information were superior and also to those who swear affirmatively to a fact, rather than to those who swear negatively or to a want of knowledge or want of recollection."

This instruction was criticized in the recent case of Remington v. Geizler, 30 N. D. 346, 152 N. W. 661. It was not held, however, in itself to constitute reversible error, nor do we believe that it should be held to constitute reversible error in the case which is before us. There was no conflict in the evidence as to the cause of the fire, nor as to the extent and nature thereof. On the question of values it could not have applied in any way, nor have influenced the jury. Its only possible application could have been to the question of the amount of the hay destroyed, and even here we find that the nature of the testimony is substantially the same, and is based upon measurements of the bases of the stacks, not before but after the fire occurred. It is indeed only in extreme cases that errors such as those complained of should be allowed to overthrow verdicts, and no such extreme case seems to be before us.

Objection is also made to the following instruction: "And I instruct you further that the testimony of one credible witness is entitled to more weight than the testimony of many others, if as to those other witnesses the jury have reason to believe, and believe from the evidence and all the facts before them, that such witnesses are mistaken or have knowingly testified untruthfully, and are not corroborated by other credible witnesses or by circumstances proved in the case."

It is claimed that this instruction was erroneous and misleading. It is also claimed that it was not confined, and that it should have been confined, in its application, to material matters only.

It is not necessary, however, that it should have been confined to material matters. This is not a case of the application of the rule of "false in one matter false in all;" for the instruction in effect merely tells the jury that if as to any *particular* matter there is one witness as against many they may believe that witness as against the many, if they think as to that particular matter the others are mistaken or have not spoken truthfully. We hardly see why it was necessary to give this self-evident instruction at all, but it is not subject to the objections made to it.

We are, however, satisfied that the trial court elsewhere erred in allowing evidence to be introduced as to the effect upon the soil and the growth of grass, which certain prairie fires in the past had had upon other pieces of land than that for the recovery of damages for the injury to which the action was brought.

The witnesses, no doubt, were competent to testify as experts in this particular, but the proper procedure would have been to have first shown this general knowledge and experience of prairie fires and their effects and then to have asked them not what injury had been done by prairie fires in the past to other pieces of land, but what effect the fire in question would have upon the particular land in question; and in response to a hypothetical question which should summarize and assume to be true, the testimony already introduced as to the duration of the fire, its velocity, the condition of the grass before the fire, and whether the fire merely skipped over the tops or burned deeply into the roots of the grass.

On account of these errors as to the injury to the land, we are unable to affirm the judgment as a whole. The special findings, however, dis-

close that all that the jury allowed for these injuries was the sum of $30. If, therefore, the plaintiff will remit from the judgment rendered the said sum of $30, the judgment so modified will be affirmed. Otherwise a new trial must be had. The costs and disbursements of this appeal will be taxed against the respondent, but only in the sum of $25. It is so ordered.