### HOUSTON ICE & BREWING ASS'N v. ARMOUR & CO. (No. 8358.)

(Court of Civil Appeals of Texas. Galveston. April 26, 1923. Rehearing Denied May 24, 1923.)

**1. Pleading ⊜228—Averment attempting to plead evidence properly stricken on exception.**

In an action by a packing company against a refrigerator company for damages to meats stored, it was not error on exception to strike out of defendant's answer an averment that defendant gave to the meat stored by plaintiff the same care it gave to a vast number of products of the same character, none of which were in the slightest degree damaged; such averment being an attempt to plead evidence.

**2. Appeal and error ⊜1042(2)—Not reversible error to strike out evidence pleaded, where admissible under plea of general denial.**

In an action by a packing company against a refrigerator company for damages to meat in storage, it was not reversible error to strike out on exception an averment in defendant's answer that it gave plaintiff's meat the same care as that of a vast number of products of same character, none of which were damaged; such pleaded evidence being admissible under defendant's plea of general denial.

**3. Appeal and error ⊜1042(2)—Not reversible error to strike out evidence pleaded, where testimony in support admitted without objection.**

In an action by a packing company against a refrigerator company for damages to meat

in storage; it was not reversible error to strike out an averment from defendant's answer that it had given plaintiff's meat the same attention as that of a vast number of products which were not damaged; there being nothing in the record to show refusal to permit proof of facts thus alleged, but that evidence thereof was admitted without objection.

**4. Witnesses ⬤⟹255(7) — Testimony from books as to value of meat damaged held not inadmissible.**

In a packing company's action against a refrigerator company to recover for meat damaged in storage, testimony from books as to value of the meat after it was withdrawn from storage and as to actual sales thereof and amounts received therefrom *held* admissible; it appearing that the witness testified from records made from the original sales tickets.

**5. Appeal and error ⬤⟹1039(13)—Error in admission of evidence not sustained by pleadings held cured by verdict.**

In a packing company's action against a refrigerator company to recover for meat damaged in storage, it was not error to permit a witness to testify as to the market value of the meat, although there was no allegation thereof; the error being cured by the verdict, and no special exception having been made.

**6. Warehousemen ⬤⟹34(10½) — Inconsistent answer to immaterial special issue held not to invalidate judgment.**

In a packing company's action against a refrigerator association for damages to meat in storage, an answer to a special issue giving the percentage of meat that was in bad condition upon withdrawal from storage *held* not inconsistent with the answer to another special issue as to the difference in market value of good, sound, merchantable pork and the value of the pork when withdrawn; the answer as to the percentage injured being immaterial.

**7. Appeal and error ⬤⟹1140(1) — Rendering judgment for excessive amount held cured by remittitur.**

In a packing company's action against refrigerator company for damages to meat in storage, error in rendering judgment for the full amount of damages found by the jury, which included losses incurred before the meats were delivered to defendant, *held* cured by the filing of a remittitur.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by Armour & Co. against the Houston Ice & Brewing Association. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, for appellant.

Campbell, Myer & Freeman, of Houston, for appellee.

LANE, J. We adopt as sufficient the general statement of the nature and result of this suit as made by appellant and agreed to by appellee, as follows:

"This suit was filed in 1920 by Armour & Co., a Texas corporation, against Houston Ice & Brewing Association, to recover damages aggregating $3,197.01 alleged to have been suffered by plaintiff on account of the failure of defendant to properly care for and preserve certain pork, consisting of spareribs, pork loins, Boston butts, and pork shoulders.

"Houston Ice & Brewing Association, defendant below, answered with general denial and specially denied that the meat was in good condition when delivered by plaintiff to it, and alleged specially that defendant exercised ordinary care with reference to preserved meat, and that any damage thereto was due to its bad condition at the time of its delivery to defendant or to the inherent character of the merchandise itself.

"Armour & Co., by supplemental petition, excepted to part of paragraph IV of defendant's first amended original answer, wherein defendant pleaded, 'Defendant gave to said meat thus stored by plaintiff the same care and attention it gave to a vast number of products of similar character it then had in storage, none of which other products were in the slightest degree damaged or injured.'

"The court sustained this exception and defendant excepted. Thereafter the cause went to trial before a jury, who answered certain special issues and awarded plaintiff a total recovery of $3,203.72. On this verdict the court entered a judgment in favor of Armour & Co. against appellant for the amount found by the jury, but plaintiff remitted the sum of $160.80, reducing the judgment to the sum of $3,043.42."

Appellant first complains of the action of the court in striking out that portion of its first amended answer which reads as follows:

"Defendant gave to said meat thus stored by plaintiff the same care and attention it gave to a vast number of products of similar character it then had in storage, none of which other products were in the slightest degree damaged or injured."

[1-3] There is no merit in this complaint, first, because the averment stricken out was an attempt on the part of appellant to plead its evidence, and was therefore properly stricken out on exception; second, it is admitted by appellant in its brief that such pleaded evidence was admissible under its plea of general denial, in which admission we concur; and, third, there is nothing in the record to show that the court refused to permit appellant to offer proof of the alleged facts, but, to the contrary, it appears that testimony in support thereof was admitted without objection.

By the second assignment it is insisted that the court erred in overruling appellant's objection to testimony of the appellee's witness Bradford, giving various figures as to the value of the meat after it was withdrawn from defendant's custody, and giving testimony as

to the actual sales of said meat, the amounts received therefrom, etc., because the testimony was obviously hearsay and secondary evidence, was on a material issue, and was not otherwise supported by legal evidence.

We do not think this assignment should be sustained. The testimony of the witness Sibewright, when considered as a whole, we think, is to the effect that the sales tickets made out when the various meats were sold and delivered were either made out by him or by those under him, and the same were made out under his supervision; that they were correctly made out; that they correctly showed the amount of meat sold, its condition, the price for which it was sold, and that the prices obtained for said meat, as shown by said sale tickets, were the best price obtainable therefor. He also testified that these tickets were all passed to the bookkeeper of the appellee and that the statement which he held in his hands, from which he was testifying, was made by Mr. Bradford; that it was taken from the books; that the facts stated in such statement are facts taken from the sale tickets and the books of appellee. There was no objection urged by appellant to the testimony of this witness.

Following the witness Sibewright the witness H. B. Bradford testified that he was assistant manager of the appellee, Armour & Co.; that he remembered the delivery of the meat involved in the suit; that he made the statement testified to by Sibewright; that it was made up from the sales tickets; that the sales tickets were made up by those selling the meats shown thereon at the time such sales were made, and that such tickets were then sent to the office of appellee; that such tickets show the article or articles sold, the value of the article sold, the quantity sold, and the price for which it was sold; that the sales tickets were made by Sibewright and under his supervision, and were sent to the office of appellee, where they are kept; that he took each and every one of these sales tickets and checked them up, one by one, by the statement he made, and that he knew that such statement was correctly made; that after making same he checked it up by the sales tickets. He testified further that Sibewright was in charge of the meat when it was sold and that said sales tickets were made by Sibewright or under his direction; that the clerks under Sibewright who actually made some of the sales made some of said tickets, but when they were so made Sibewright was present and dictated the price for which the meat was sold; that it was the duty of Sibewright to ascertain what part of the meat was good and what bad as it was taken out of cold storage, and that he attended to these duties. Testifying further, this witness said that he made up the statement at the completion of the last delivery of the products in question; that is, that he made the statement as soon

as the last sales were made. He stated further that there were enough of the sales tickets to cover one side of the walls of the court room.

[4] The facts stated, we think, show: First, that the sales tickets testified about by the witnesses were the original entries of the several transactions to which they purport to relate; second, that such entries were made in the regular course of the business of appellee and at the time the several transactions to which they relate were had; third, that such entries clearly indicate what the several charges were for; fourth, that such entries were made by those authorized to make them; fifth, that the sales made and the tickets showing such sales were made in the regular course of the business of appellee, that such original entries were correctly entered upon the books of appellee, and that such books were correctly kept. The facts shown, we think, laid a sufficient predicate for the admission of the testimony complained of.

In Stark v. Burkitt, 103 [Tex. 437, 129 S. W. 343, Judge Brown, in speaking for our Supreme Court, said:

"To authorize the introduction of book accounts in evidence, it must be proved: (1) That the book or books contain original entries of transactions pertinent to the business in question. (2) It must appear that the entries were made in the regular course of business at or near to the time the transactions were had. (3) That the entries must be such as to indicate what the charge is for; that is, what the transaction was. (4) That the entries were made by one who was authorized to do so, and that he did the acts so recorded himself, or that he made the record upon information derived from one who was authorized to do so. (5) That the transactions were regularly entered, and that the books were correctly kept. 17 Cyc. p. 371 et seq.; Taylor v. Coleman, 20 Tex. 778; Ward v. Wheeler, 18 Tex. 264; Burnham v. Chandler, 15 Tex. 444; Bupp & Robbins v. O'Connor, 1 Tex. Civ. App. 328, 21 S. W. 619."

Under the rule stated by Judge Brown, the testimony of Bradford was properly admitted.

By the third assignment it is urged that the trial court erred in permitting the witness Sibewright to testify as to the market value of the meat in question, in that there was no allegation as to the market value of such meats.

[5] We agree with appellee in its contention that the objection to the testimony complained of in the third assignment is one more to the sufficiency of the allegations contained in appellee's petition than to the admissibility of the testimony, and that, in either event, the objection comes too late to be by the court considered, in that if there existed any valid objection to the testimony it was cured by the verdict of the jury, and that if there was a valid objection to the allegation of the petition, in the respect now complained

of, the same had been waived by the failure of appellant to specially except to the same. Ellis v. Howard Smith Co., 35 Tex. Civ. App. 566, 80 S. W. 633; Williams v. Warnell, 28 Tex. 610; Hance v. Burke, 73 Tex. 62, 11 S. W. 135; Dunekake v. Beyer, 79 S. W. 209, 25 Ky. Law Rep. 2001.

When the verdict of the jury can be fairly considered as establishing between the parties the very fact which should have been, but is not, precisely averred in the petition not specially excepted to, and especially when it clearly appears, as in the present case, that the particular fact was understood by the parties to be the point in issue to be decided by the jury, it would, we think, be unnecessary for the ends of justice to remand the cause that it might be again tried upon the issues so understood.

In Dunekake v. Beyer, supra, it is said:

"Newman in his work on Pleading and Practice, * * * says: 'The verdict will not only aid a defective allegation, but it extends sometimes even to cure an omission altogether to make a necessary allegation. Where there are defects or imperfections in the pleading, yet the issue joined is such as necessarily required on the trial, the proof of the facts defectively or imperfectly stated, or even omitted, and without which it is not reasonable to presume that a jury would have given a verdict for the party, such deficiency is cured by the verdict.'"

In Ellis v. Howard Smith Co., 35 Tex. Civ. App. 566, 80 S. W. 633, it is said:

"If it should be conceded that the petition of defendant in error would have been held bad on demurrer, no demurrer having been interposed, if defective at all, the defects were such as, in our opinion, were cured by the verdict. A verdict will not only aid a defective allegation, but it extends sometimes even to cure an omission altogether to make a necessary allegation. Where there are defects or imperfections in the pleading, yet the issue joined is such as necessarily required on the trial the proof of facts defectively or imperfectly stated, or even omitted, and without which it is not reasonable to presume that a jury would have given a verdict for the party, such deficiency is cured by the verdict."

[6] By appellant's points 4 and 5 it is insisted that the answers of the jury to special issues No. 2A and No. 5 are so opposed to the evidence and are so inconsistent and irreconcilable with each other that no judgment can fairly be based thereon.

Special issue No. 2A is, in effect, as follows:

"What percentage of each kind of meat enumerated was in bad condition at the time of its withdrawal from cold storage?"

Special issue No. 5 is as follows:

"What was the difference in the market value in Houston, Tex., of good sound, merchantable pork on the dates that plaintiff withdrew said pork and the value of the pork as and when it was withdrawn?"

In answer to issue No. 2A, the jury found that at the time of the withdrawal of the pork the following percentage was in bad condition: Spareribs 95.15 per cent., pork loins 96.07 per cent., pork shoulders 100 per cent., Boston butts 100 per cent.

We agree with appellant that these findings, in so far as they relate to the spareribs and pork shoulders, are not only unsupported by any evidence, but they are contrary to the uncontradicted evidence. The uncontradicted testimony shows that there was placed in appellant's cold storage 12,000 pounds of spareribs, and that 1,782 pounds thereof were in good condition when withdrawn and that 10,218 pounds of the same were in bad condition; yet in the face of this uncontradicted testimony the jury, in answer to issue No. 2A, found that 95.15 per cent., or 11,418 pounds, of such spareribs were in bad condition when withdrawn from cold storage. The undisputed evidence also shows that there was placed in cold storage 874 pounds of pork shoulders, and that 40 pounds thereof was in good condition when withdrawn and that 834 pounds thereof were in a damaged condition when withdrawn. Notwithstanding such testimony, the jury, in answer to issue No. 2A, found that 100 per cent., or the entire lot, of shoulders were in bad condition when withdrawn. We have, however, reached the conclusion that, in view of the submission of special issue No. 5 and the answer of the jury thereto, the submission of the question as to the percentage of loss or damage, as was done by special issue No. 2A, was the submission of an immaterial issue, and that the finding of the jury as to the percentage of meats damaged became an immaterial finding.

In answer to special issue No. 5 the jury found that the difference in the value of the 12,000 pounds of spareribs if in good, sound, merchantable condition and said spareribs in the condition in which it was when withdrawn from cold storage was $1,859.68, and that the difference in the value of the 874 pounds of shoulders under the two conditions just stated was $116.76. It is apparent that such answers cannot be reconciled with the answers to special issue No. 2A, but as the findings in answer to issue No. 5 are supported by the uncontradicted evidence and the findings in answer to issue No. 2A are without any evidence to support them, and as the question of the percentage of pounds of the several kinds of meat damaged was an immaterial inquiry in view of the findings in answer to issue No. 5, we do not think the inconsistency of the two answers should be grounds for a reversal of the judgment.

The jury, in answer to issue No. 5, found that the loss on spareribs was $1,859.68, on the loins $1,082.20, on the Boston butts $114.48, and on the pork shoulders $116.76—a total of $3,203.72.

Both Sibewright and Bradford testified that 10,218 pounds of the spareribs were in bad condition when withdrawn from cold storage. Sibewright testified that spareribs in good condition were worth 23 cents per pound at the time of such withdrawal, and that the 10,218 pounds of spareribs which were in bad condition were worth only 4.8 cents per pound. So deducting 4.8 cents from 23 cents shows a loss of 18.2 cents per pound on the 10,218 pounds of spareribs which were in bad condition—a total sum of $1,859.67⅓, just two-fifths of a cent less than found by the jury. Both Sibewright and Bradford testified that the loss on the pork loins was $1,082.76, 4 cents less than found by the jury. Both witnesses testified that the loss on the Boston butts was $144.82, 34 cents more than found by the jury. Both witnesses testified that the loss on the shoulders was $116.76. The jury found the same loss. Thus it is made apparent that by the undisputed testimony of the two witnesses the total loss was $3,204.01⅓, while the jury found the total loss was $3,203.72, just 29 cents less than testified to by the witnesses.

We think the evidence amply sustains the loss as found by the jury.

It is, we think, well settled that an error of the trial court in submitting an immaterial special issue to the jury and the findings of the jury in answer to such issue are harmless, and that they constitute no reason for a reversal of a judgment amply supported by the evidence.

[7] The court rendered judgment in favor of appellee for $3,203.72, the full amount found by the jury. This was error, in that the jury found that 5 per cent. of the loss was incurred before the meats were delivered to appellant. This error was, however, cured by the filing of a remittitur of $160.80 by appellee.

By appellant's sixth point it is urged that there is fundamental error apparent of record, in that appellee alleged that appellant was "an association duly organized under the laws of the state of Texas," and describes it further thus:

"That defendant is doing business under the agreement and declaration, of which association Hugh Hamilton and R. L. Autrey are members, agents, and managing trustees, and upon whom service of process may be had."

It is insisted that a concern such as described is a copartnership, and that as the constituent members of such partnership are not named in the judgment, such judgment is voidable and should be reversed. In support of this contention appellant cites Wells v. Telegraph Co. (Tex. Civ. App.) 239 S. W. 1001; Frank v. Tatum, 87 Tex. 204, 25 S. W. 409; Glasscock v. Price, 92 Tex. 271, 47 S. W. 965; Houghton v. Puryear, 10 Tex. Civ. App. 383, 30 S. W. 583; Standard Light & Power Co. v. Munsey, 33 Tex. Civ. App. 416, 76 S. W. 931.

The authorities cited support the contention that a judgment against a copartnership alone is voidable, and that the suit and judgment should be against one or more of the parties composing the copartnership. We cannot, however, agree with appellant that it was held in the case of Wells v. Telegraph Co. (Tex. Civ. App.) 239 S. W. 1001, that an association such as the plaintiff in the present case describes is a copartnership. A careful reading of the decision in the Wells Case will disclose that it does not hold that the concern involved in the suit was a copartnership.

We are not informed by anything in the statement of fact or otherwise as to the nature and character of the Houston Ice & Brewing Association, that is, which it is, if either a limited partnership authorized by article 6126, Vernon's Sayles' Statutes 1914, or an unincorporated joint-stock company or association referred to in article 6149; nor does the description thereof in the plaintiff's petition furnish us with such information. The plaintiff alleged that defendant is:

"An association organized under the laws of the state of Texas, with its principal office and place of business in Houston, Harris county, Tex., and that it is doing business under an agreement and declaration, of which association Hugh Hamilton and R. L. Autrey are members, agents, and managing trustees."

These allegations seem to be contradictory; it is first alleged that the Houston Ice & Brewing Association is an association organized under the laws of Texas, and then it is alleged that it is doing business under an agreement and declaration. What kind of agreement and declaration is not stated. It cannot be both an association organized under the laws of Texas and an association doing business under an agreement and declaration, as there is no law of Texas authorizing the organization of an association last mentioned.

So far as we are informed, the appellant company may be an unincorporated joint-stock company such as is referred to by article 6149, supra, and if it is such, suit against it is specifically authorized by said article, which reads as follows:

"Hereafter any unincorporated joint-stock company or association, whether foreign or domestic, doing business in this state, may sue or be sued in any court of this state having jurisdiction of the subject-matter in its company or distinguishing name; and it shall not be necessary to make the individual stockholders or members thereof parties to the suit."

Articles 6150, 6151, and 6152 read as follows:

Art. 6150: "In suits against such companies or associations, service of citation may be had on the president, secretary, treasurer or general agent of such unincorporated companies."

Art. 6151: "In suits by or against such unincorporated companies, whatever judgment

shall be rendered shall be as conclusive on the individual stockholders and members thereof as if they were individually parties to such suits."

Art. 6152: "Where suit shall be brought against such company or association, and the only service had shall be upon the president, secretary, treasurer or general agent of such company or association, and judgment shall be rendered against the defendant company, such judgment shall be binding on the joint property of all the stockholders or members thereof, and may be enforced by execution against the joint property; but such judgment shall not be binding on the individual property of the stockholders or members, nor authorize execution against it."

We are not in possession of information which would authorize us to hold that the judgment is voidable. We therefore overrule appellant's sixth point.

Having reached the conclusion above expressed, the judgment is affirmed.

Affirmed.