**COMMUNITY PUBLIC SERVICE CO. v. GRAY.**

**No. 3536.**

Court of Civil Appeals of Texas. El Paso.
June 3, 1937.

R. D. Blaydes, of Fort Stockton, and Bennett L. Smith, of Fort Worth, for appellant.

Hart Johnson and Travers Crumpton, both of Fort Stockton, for appellee.

NEALON, Chief Justice.

Plaintiff (appellee in this court) sued defendant (appellant) for damages alleged to have been occasioned to plaintiff through the negligence of defendant, acting through its agent, W. C. Barnett. It was alleged that a bottle-filling machine in plaintiff's bottling plant at Fort Stockton had been so damaged through the negligence of defendant's said representative as to impair its market value to the extent of $1,400, and that plaintiff was further damaged through loss of anticipated profits in the sum of $1,200.

The case was submitted upon special issues, in response to which the jury found that defendant was negligent in the manner alleged; that plaintiff was not guilty of contributory negligence; and that the negligence of defendant was the proximate cause of the injury to plaintiff's bottle-filling machine, which resulted in damage to plaintiff in the sum of $300 by reason of the injury to the machine, and $615.50 in loss of profits occasioned directly and proximately by said injury. Judgment was accordingly rendered in favor of plaintiff and against defendant for $915.50.

From this judgment, defendant appeals.

Briefly stated, the facts were these: Defendant is and was on and prior to August 26, 1935, engaged in the business of supplying electric current for power and lighting purposes to the general public in Fort Stockton. Plaintiff was at said time and prior thereto engaged in the business of making and selling Nehi, a carbonated water beverage. He manufactured this beverage in his bottling plant at Fort Stockton and purchased from defendant

the electric power that operated the machinery in his plant—part of which was an automatic bottle-filling machine.

W. C. Barnett, an employee of defendant, while engaged in the performance of his duties, changed the meter at plaintiff's bottling plant during the afternoon of August 26, 1935. When he went to the plant it was closed and the door was locked. He got Bill King, an employee of plaintiff, to admit him to the building. Barnett took the meter off the wall and put in a new meter. He testified that he told Bill King that it would be necessary to start the motors to see in what direction they ran; that he asked King if he understood how to operate the machine; that King started the bottle-washing machine (he supposed) and also the bottle-filling machine, and reported that they were all right.

Plaintiff testified that the bottle-filling machine was in proper working order on August 26th; that about 11 o'clock on the night of August 26th he visited the plant preparatory to commencing bottling operations at midnight; that when he started the bottling machine it locked in operation and the dial on which the bottles were placed cracked; that he and others worked through to the 28th attempting to repair the machine, and found that the flywheel was running in reverse; he got Barnett to the plant; Barnett switched the places of two wires and the motors once again ran forward. However, plaintiff said, parts of the machine were broken and it would not work; that there was another breakdown in about three weeks; that the machine's efficiency was decreased and it has never been restored to full efficiency.

There was considerable testimony as to the volume of business and loss of business which we will not now restate, but to which we will advert if and when necessary in the discussion of the questions involved.

### Opinion.

Appellant urges fifty-three assignments of error supported by forty-three propositions. Necessarily, therefore, our discussion of the individual issues presented will not be extensive, though all have been considered.

■ The first five assignments complain of the court's refusal to instruct a verdict in favor of defendant. They are without merit. Under the uncontradicted evidence, Barnett was the representative of defendant in changing the meter. Apparently, it was changed at defendant's instance. It

had sole control of the operation. Before the change the machine was operating normally; thereafter the filling machine operated backwards and locked. The trouble then began. When Barnett thereafter changed a couple of wires in the meter, said machine operated in the usual manner. Henry Jones testified that running in reverse could break practically every part of a filling machine. Dunagan testified that reverse running would break the housing. Cecil Moore likewise said that operation in reverse would break certain parts. Plaintiff testified to reduced market value of the filling machine after the injury and to loss of anticipated profits resulting from its decreased efficiency. He testified, also, that the reverse operation caused the injury to the machine. The evidence was sufficient.

■ Defendant excepted to plaintiff's allegation that he cleared a profit of 50 cents per case upon the Nehi he bottled and sold, and would have made a profit of 50 cents per case upon 2,400 cases that he would have sold but for the breaking of the machine. The exception should have been sustained. Defendant was entitled to know from plaintiff's pleadings upon what facts he based his allegations of lost profits; it was entitled to be informed of the cost of production and delivery and the elements that made up such cost.

■ Assignments 11 to 23, inclusive, challenge the action of the court in excluding portions of letters written Cecil Moore, a former business associate of appellee. They were offered upon the theory that they contradicted certain testimony of plaintiff, which was stated to be that practically all of his sales were for cash. Referring to the statement of facts, we find that the question was asked plaintiff if he did not answer, when his oral deposition was taken, that practically all of his sales were for cash. No time was fixed by the question. He was asked if "he collected it," and replied, "Most of it." These letters refer to three or four who either did not pay or were slow, and to difficulties plaintiff was having financially. They do not contradict the testimony of plaintiff as to profits upon sales made, nor do they indicate that plaintiff's troubles were due to a failure to sell profitably such products as he was able to manufacture. The assignments are overruled.

■ The court's error in admitting plaintiff's conversation with W. C. Hodges

was harmless. The statement objected to was that Barnett had told Hodges that he (Barnett) did not seal the meter, that all the motors would run backward. Alleged liability was not predicated upon a failure to seal the meter. The statement does not contradict the testimony of Barnett as to his opinion with respect to the motors. However, the conversation should have been excluded.

Appellant's twenty-fifth assignment was directed to the action of the court in permitting plaintiff to testify that he knew the market value of the bottle-filling machine at Fort Stockton, Tex., before and after the breakdown of August 26, 1935. Plaintiff was experienced in the business of operating such machinery, was familiar with business conditions in Fort Stockton, was apparently in touch with distributors of the equipment involved in the controversy, and was positive as to what it would cost to reproduce the machine in its condition prior to the breakdown. Certainly he was in better position to judge of the value of the machine than were those who lacked his training and experience, and whose interests did not require or enable them to acquire this knowledge. His opinion, therefore, had value. Provided the evidence shows the machine had a market value at Fort Stockton at the time inquired about, we cannot say that the court abused its discretion in admitting the testimony. In any event, from the evidence he appeared qualified to express an opinion as to the intrinsic value of the machine. Rogers & Adams v. Lancaster (Tex.Com. App.) 248 S.W. 660; Bettis v. Bettis (Tex. Civ.App.) 83 S.W.(2d) 1076; Galveston, H. & S. A. Ry. Co. v. Rheiner (Tex.Civ. App.) 25 S.W. 971; Niagara Fire Ins. Co. v. Pool (Tex.Civ.App.) 31 S.W.(2d) 850; Southern Traction Co. v. Hulbert (Tex.Civ. App.) 177 S.W. 551; Ft. Worth & D. C. Ry. Co. v. Hapgood (Tex.Civ.App.) 210 S.W. 969. The evidence required the submission of the issue of "actual" or "intrinsic" value, rather than market value, since it was not shown that there was actual buying and selling of such machines on the Fort Stockton market. Black v. Nabarrette (Tex.Civ.App.) 281 S.W. 1087. "All of the definitions [of market value] presuppose a concensus of buyers and sellers, a current price and numerous sales." McGilvra v. Minneapolis Ry. Co., 35 N.D. 275, 159 N.W. 854, 858. See, also, Souther v. Hunt (Tex.Civ.App.) 141 S.W. 359; Burr's Ferry, etc., Co. v. Allen (Tex.Civ.App.)

149 S.W. 358; Missouri, K. & T. Ry. Co. v. Murray (Tex.Civ.App.) 150 S.W. 217; Stanley v. Sumrell (Tex.Civ.App.) 163 S. W. 697.

Assignments 26, 27, 28, and 29 complain of the exclusion of opinion testimony of J. C. Dunagan as follows: (1) As to the manufacturing cost of soda water at Fort Stockton; (2) that the cost of delivery to various named towns would be "prohibitive"; (3) "I would not want to go over seventy-five miles," in answer to a question as to how far soda water could be hauled profitably; (4) that a manufacturer could not deliver profitably from Fort Stockton to Carlsbad, N. M., at 65 cents per case. In connection with the proffered testimony the witness said, "I don't know what his (plaintiff's) overhead is or anything of that kind." There was no error in excluding the witness' opinions. The assignments are overruled.

The court did not err in refusing to allow defendant to prove by plaintiff that he had given his note for the plant and that it was past due and unpaid. This would not tend to disprove a loss of anticipated profits during a specified period of the year.

The thirty-first assignment challenges the court's action in permitting the plaintiff while testifying as to sales made during the last six months of 1935 to refresh his memory from his sales reports made to the Nehi Corporation at Columbus, Ga. The entries used were made by plaintiff several months after the sales were made. They were copied by him from his original records which he also made. He testified that he transcribed correctly the entries that he was using. These copied entries were not introduced in evidence. The witness testified that he knew at the time he made the entries that they were correct, though he had no independent recollection of all of the items. Had he been able from examining these copied entries to testify from a memory thus refreshed as to the facts, the fact that they were not original entries would not be a valid objection to their use. Houston & T. C. R. R. Co. v. Burke, 55 Tex. 323, 40 Am.Rep. 808; Hubbard City Cotton Oil & Gin Co. v. Nichols (Tex.Civ.App.) 89 S.W. 795; Cobb v. Riley (Tex.Civ.App.) 190 S.W. 517; San Antonio & A. P. Ry. Co. v. Turner, 42 Tex.Civ.App. 532, 94 S.W. 214; Houston Ice & Brewing Ass'n v. Armour & Co. (Tex.Civ.App.) 253 S.W. 635.

However, in effect, he testified only that he knew the entries were correctly copied from original entries which he knew to be correct at the time he made them. In such a case, the original entries must be produced, if available. Fort Worth & D. C. Ry. Co. v. Garlington, 41 Tex. Civ.App. 340, 92 S.W. 270; Eppler v. Brown (Tex.Civ.App.) 30 S.W. 710. See discussion and citations in Texas Law of Evidence, §§ 249 et seq.

The thirty-second assignment is overruled. No showing is made as to testimony that would have been introduced had the Court's ruling been different. The evidence given by Hodges before objection was made was not withdrawn from the jury's consideration.

Assignments 33 and 33a complaining of the court's definition of market value are overruled. The definition read as follows: "By the term 'Market value,' as that term is used in this charge, is meant: that reasonable sum of money which the property would bring on a fair sale, by a man willing to sell but not obliged to sell to a man willing to buy but not obliged to buy." Manchester Fire Ins. Co. v. Simmons, 12 Tex.Civ.App. 607, 35 S.W. 722.

Assignments 34 to 43 complain of the refusal to submit certain issues requested by defendant. Requested issues 1, 2, 3, 4, 8, and 10, are evidentiary in character, while there was no evidence to warrant the submission of requested issues 5, 7, 11, and 12. Issue No. 9 was sufficiently submitted in the regular charge.

Assignments 44 to 50 complain of the court's action in overruling certain objections to the court's charge. We find no merit in the objections, and the assignments are overruled.

Appellant objected to special issue No. 11 upon the grounds (among others) that (1), it omitted the element of what would be a reasonable time after the accident in which plaintiff by the use of reasonable diligence could have restored the machine to the efficiency it had before the accident; (2) that the issue was on the weight of the evidence in that it assumed that from August 26, 1935, to November 1, 1935, was such reasonable time. Appellant likewise objected to the submission of special issue No. 12 upon somewhat similar grounds. These issues read as follows:

"Special Issue No. 11:

"Do you find from a preponderance of the evidence in this case that the injury to plaintiff's Dixie Bottling Machine, that occurred to it on or about August 26th, 1935, if any did occur, proximately caused a loss of any net profits to him from his business between the date of August 26th, 1935, and November 1st, 1935?

"Special Issue No. 12:

"What sum of money, if any, do you find from a preponderance of the evidence in this case has plaintiff lost by reason of the loss of net profits from his business between August 26th, and November 1st, 1935, resulting from the injury, if any, to his Dixie Bottling Machine that occurred on or about August 26th, 1935, if any did occur?

No. 12 was to be answered only if No. 11 were answered in the affirmative.

It is well settled that loss of anticipated profits occasioned by the tortious interruption of an established business are recoverable as damages. American Const. Co. v. Caswell (Tex.Civ.App.) 141 S.W. 1013; Texas & P. Ry. Co. v. Mercer (Tex. Com.App.) 90 S.W.(2d) 557, 106 A.L.R. 1299, opinion adopted by Supreme Court; Southern Properties, Inc., v. Carpenter (Tex.Civ.App.) 50 S.W.(2d) 876; Ewing v. Wm. L. Foley, Inc., 115 Tex. 222, 280 S. W. 499, 44 A.L.R. 627; Paul E. Wolff Co. v. Frankenthal, 96 Mo.App. 307, 70 S.W. 378.

For a comprehensive and informative review of the authorities, see Gildersleeve v. Overstolz, 90 Mo.App. 518.

Proof of reasonable certainty of profits is all that is required. Springer v. Riley (Tex.Civ.App.) 136 S.W. 577.

Where the loss of anticipated profits results from injury to personal property, the recovery is limited to the period of time reasonably necessary to restore the property to its condition immediately prior to the injury. Chicago, R. I. & G. Ry. Co. v. Zumwalt (Tex.Com.App.) 239 S.W. 912; Halcomb v. Stubblefield, 76 Tex. 310, 13 S.W. 231.

Plaintiff alleged that after the bottle-filling machine had been repaired as fully as possible its market value was less than before its breaking. For this element of damage the jury allowed $300. Ordinarily, in addition to a recovery of the amount

the value was thus depreciated the owner would be entitled to rental value of the property during the time he was deprived of its use. Since, however, the idleness of this machine effected a stoppage of all output, the loss of anticipated profits is the test of the value of the use of the machine. To allow recovery for anticipated profits beyond the time reasonably necessary to make possible repairs would be to permit (to that extent) a double recovery, since the lost profits after repairs are made are due to the permanent injury to the machine for which, in this case, the jury allowed $300. It is clear, therefore, that the time reasonably necessary for making the repairs was a question of fact as to which the defendant was entitled to a jury finding, and the objections to the charge as being upon the weight of the testimony, and of omitting to take into consideration the question of reasonable time were valid.

For the errors noticed, the judgment is reversed and the cause remanded.

Reversed and remanded.