TOWN OF LOWELL *v.* C. M. PARKER AND G. R. CHAMBERLAIN.

January Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed June 4, 1923.

*Animals—Killing of Sheep by Dogs—Evidence—Speculative—
    Evidence to Show That Dogs Other Than Those Claimed to
    Have Killed Sheep Had Opportunity to Kill—Remoteness—
    Relevancy—Instructions.*

1. In an action under G. L. 6737 by a town to recover damages paid by it for sheep killed and injured by dogs claimed to belong to defendants, where evidence had been introduced showing propensity and opportunity for defendants' dogs to kill the sheep, evidence that the pasture where the sheep were injured was a common hunting ground where dogs hunted foxes and rabbits was inadmissible to show that defendants' dogs were there for a legitimate purpose, especially in view of positive evidence that defendants' dogs had on different occasions chased sheep of the same flock.

2. In such action evidence that the pasture in which sheep were killed was a common hunting ground where dogs hunted foxes and rabbits was inadmissible to show that dogs other than those belonging to defendants had an opportunity to commit the injury complained of, in the absence of any showing that such other dogs were prone to kill or worry sheep, or other animals.

3. In such action evidence that prior to the time the sheep were killed by dogs in a pasture, defendants' dogs had run and "give tongue" in such pasture when they were not chasing sheep was too speculative to be admissible, as it did not tend to show that such dogs did not chase or kill the sheep at the time of which complaint was made.

4. In such action, where the only evidence tending to show that defendants' dogs killed certain sheep was that such dogs were prone to chase sheep, especially in the flock of which those killed were a part, and were in the vicinity at, or about, the time the sheep were killed, it was competent for the defendants to rebut, or weaken, any presumption from such circumstances by showing that other dogs with like propensities were in the vicinity, and had like opportunity to do the mischief.

5. In such circumstances remoteness of the time and place of incidents respecting the chasing of sheep by other dogs in the vicinity was largely within the discretion of the trial court, and the facts showed no abuse of such discretion.

6. In an action under G. L. 6737 for killing sheep by dogs, evidence that a witness saw two hounds, which he thought were defendants', go through a different pasture than the one where sheep were killed, and that they did not molest sheep therein, was inadmissible, when plaintiff's evidence tended to show, and the defendants did not claim the contrary, that defendants' dogs were not at large, in that vicinity, at that time.

7. In such action it was error for the court to charge that evidence that defendants' dogs had killed a lamb, or lambs, belonging to the owner of the sheep for the death of which recovery was sought, at a subsequent time, was received only to show propensity of such dogs and was no evidence that they did the damage complained of, and the court should have charged that such evidence was a circumstance tending to show that fact, in that it tended to show propensity, one of the elements of the killing.

ACTION OF TORT based on G. L. 6737 to recover damages paid by plaintiff to the owner of sheep killed by dogs, against the owners of the dogs. Plea, the general issue. Trial by jury in Orleans County Municipal Court, Willard M. Wright, municipal judge. Verdict and judgment for the defendants. The plaintiff excepted. The opinion states the case. *Reversed and remanded.*

*E. J. Smith, H. S. Pierce,* and *F. D. Thompson* for the plaintiff.

*A. W. Farman* for the defendant.

SLACK, J. This is an action of tort predicated on G. L. 6737, to recover damages paid by the plaintiff to one Barney for sheep killed and injured by dogs, which it is claimed were owned by the defendants. The case is here on plaintiff's exceptions. The questions for review relate to the admission of evidence, and to the charge of the court, on the issue of whether defendants' dogs did the damage complained of.

In order to determine the admissibility of the evidence excepted to, it is necessary to have in mind the status of plaintiff's evidence at the time the challenged evidence was received.

The plaintiff's evidence, in opening, tended to show that in the summer of 1921, Barney's sheep were kept in the Paine pasture, so-called, on what was known as Leland hill in the plaintiff town; that, during the latter part of June and early part of July, dogs killed several of said sheep, and so injured others that they died or had to be killed, and injured still others by chasing and worrying them; that on June 24, defendants' dogs were seen chasing some of Barney's sheep in his pasture, and that they chased those sheep out of that pasture and followed them until driven away by men working in an adjoining pasture; that three days later the same dogs were seen chasing some of Barney's sheep outside of his pasture; that a week or ten days later, the same dogs were again seen chasing some of Barney's sheep in, or near, his pasture; that those dogs were seen in Barney's pasture, and in that immediate vicinity, on several different occasions between June 24 and the middle of July following; that during that time, hounds (such were defendants' dogs) were frequently heard in the Barney pasture, and that during that time no dogs other than hounds were heard

2

in that pasture; that about July 20, defendants took measures to keep their dogs away from the Barney pasture; that Barney had no trouble with dogs, and did not hear dogs in his pasture, after that; that Barney found four dead sheep in his pasture, June 28, and found several others, dead, in his pasture during the next two or three weeks; that the owner of an adjoining pasture found the carcasses of three sheep in his pasture the spring following; that these, together with other sheep that died or had to be killed because of their injuries, made up the number for which the plaintiff paid Barney; that plaintiff also paid Barney for injuries to his sheep which defendants' dogs chased and worried; that in the spring of 1922, defendants' dogs killed two lambs that belonged to Barney, near his buildings. It also appeared, in rebuttal, and after the evidence excepted to had been admitted, that some of the sheep chased by defendants' dogs on June 27 were so badly bitten, or "chewed up" as one witness testified, that they later died or had to be killed.

It thus appeared, when the evidence complained of was admitted, that there was no direct or positive evidence in the case that defendants' dogs killed any of Barney's sheep, or that they injured any of them except by chasing or worrying them. The only evidence tending to connect defendants' dogs with the killing of the sheep found dead in Barney's pasture, and in the adjoining pasture, was purely circumstantial,—it showed nothing beyond propensity and opportunity. With plaintiff's evidence in this posture, defendants were permitted to show by several witnesses, subject to plaintiff's objection and exception that the evidence was immaterial and incompetent, that the Paine pasture, and the whole of Leland hill, was a common hunting ground where hounds and other dogs hunted foxes and rabbits, for the purpose of showing why defendants' dogs were there.

[1, 2] This evidence, it will be observed, was not offered, or received, for the purpose of showing that other dogs had an opportunity to commit the injury complained of, but rather, to show that defendants' dogs were in the Paine pasture, and that vicinity, for a legitimate purpose, and not for the purpose of killing or worrying Barney's sheep. In other words, the jury was asked to infer that because dogs were accustomed to go to the Paine pasture to hunt foxes and rabbits, the defendants' dogs were there for that purpose on the occasions described by plaintiff's witnesses. We think that this was traveling too far

into the realm of conjecture and speculation, especially in view of the positive evidence that defendants' dogs chased the Barney sheep on different occasions. Nor was this evidence admissible for the purpose of showing that other dogs had an opportunity to commit the injury complained of, in the absence of any showing that they were prone to kill or worry sheep, or other animals.

[3]   The defendants claimed that their dogs were not chasing Barney's sheep on the occasions testified to by plaintiff's witnesses, but that they "were on the track of something," and for the purpose of showing that such was the case on June 24, they were permitted to show, subject to plaintiff's exception, that their dogs run and "give tongue" in the Paine pasture in the spring of 1921, previous to June 24, when they were not chasing sheep. This evidence was too speculative to be admissible. The fact that a dog chased a fox or rabbit in April has no tendency to show that he didn't chase, or kill, sheep the following June.

The defendants were allowed to show, subject to plaintiff's exception, that a dog belonging to one Stewart attacked a sheep half or three-quarters of a mile from the Paine pasture, the latter part of June, 1921, and that said dog was not killed until after the injury complained of was committed; that dogs other than defendants' dogs chased sheep in the Newton pasture, which was a mile or a mile and a half from the Paine pasture, in June, 1921, and again the following August or September; that two dogs, other than defendants' dogs, were seen chasing one of Barney's sheep in September, 1921.

[4]   Since the only evidence in the case tending to show that defendants' dogs killed the sheep that were found dead at different times was the fact that they were prone to chase sheep, especially Barney's sheep, and were in the vicinity where the sheep were found at, or about, the time the sheep were killed, we think that it was competent for the defendants to rebut, or weaken, any presumption that might be drawn from those circumstances by showing that other dogs with like propensities were in the vicinity, and had like opportunity to do the mischief. It is not apparent why the defendants' dogs should be singled out for the application of this presumption, to the exclusion of other dogs to which it might be applied with equal force. We think the correct rule is stated in *Rowe* v. *Bird,* 48 Vt. 578, although this question was not there involved. It is there said: "If the evidence relied upon by the plaintiff had been altogether

circumstantial, and the fact that the defendant's dog was prone to do such mischief, and was at that time at large and in the vicinity, was relied upon to prove the fact that the mischief was done by defendant's dog, then, to modify and rebut such presumption, the proof that other dogs with like propensity were in the vicinity, and had like opportunity to do the mischief, would, we think, be admissible.'' See also, *Ballou* v. *Humphrey,* 8 Kan. 219. Nor is what is said in *Dover* v. *Winchester,* 70 Vt. 418, 41 Atl. 445, in conflict with the views here expressed. In that case it appeared that the sheep for which recovery was sought were killed by being bitten in the neck and hindquarters. Evidence was admitted that dogs killed other sheep about the same time, a mile distant, by biting them in the same way. There it was the manner of killing,—the similarity of attack, that was relied upon and not the circumstance of propensity and opportunity, as is manifest from what the Court said: ''It was legitimate for the defendants to show that dogs of other parties, acting independently of their dogs, killed the sheep in question; but that other dogs killed other sheep 'in the same way that the sheep were that they have described as being killed by these dogs,' which was the offer, was not relevant to the issue whether the defendants' dogs killed the sheep for which suit was brought.''

[5] The remoteness of the time and place of the incidents testified to, was largely within the discretion of the trial court, and nothing appears to indicate that its discretion was improperly exercised.

[6] The evidence of the witness Newton, that he saw two hounds, which he thought were the defendants' hounds, go through his pasture sometime in the fall of 1921, and that they did not molest his sheep, should have been excluded, in view of the fact that plaintiff's evidence tended to show, and the defendants did not claim the contrary, that defendants' dogs were not at large, in that vicinity, at that time.

[7] The court charged the jury, in substance, that the evidence that defendants' dogs killed a lamb, or lambs, that belonged to Barney, in the spring of 1922, ''was received for the purpose only of showing propensity of the dogs in respect of worrying or killing sheep and lambs, * * * it is no evidence that the hounds did the damage complained of in this case.'' This was excepted to by plaintiff on the ground that the evidence referred to by

the court tended to show propensity, and that propensity was one of the elements of the claimed killing. We think the exception well taken. The language used, which was in no way changed or modified elsewhere in the charge, did not correctly apprise the jury of the full force and significance of the evidence referred to.

While, of course, that evidence was not direct evidence that defendants' dogs killed Barney's sheep, it was a circumstance tending to show that fact in that it tended to show propensity,— one of the elements of the killing, and the jury should have been so instructed.

. *Judgment reversed and cause remanded.*

NOTE:—MILES, J., having retired from the Bench took no part in the disposition of this case.