Robert C. SMITH, Plaintiff and Respondent,

v.

Alex RIEDINGER, Defendant and Appellant.

No. 7785.

Supreme Court of North Dakota.

Feb. 19, 1959.

Kelsch, Scanlon & Kelsch, Mandan, for defendant-appellant.

J. K. Murray, Bismarck, for plaintiff-respondent.

MORRIS, Judge.

The plaintiff brought this action to recover damages for the killing of plaintiff's chickens by defendant's dogs. The action is based on Section 36–2111 NDRC 1943 which provides:

"The owner of any dog which shall kill, wound, or chase any sheep or other domestic animal or poultry belonging to another person shall be liable to such other person for all damages caused thereby."

The complaint alleges that the defendant was the owner and had control of three or more dogs and that the plaintiff was the owner of a flock of purebred chickens which he kept and maintained on his farm in Morton County about ten miles south of the city of Mandan and that between the first day of May, 1957 and the fourteenth day of August, 1957 defendant's dogs killed 180 purebred hens that were of the reasonable market value of $3 each, and 170 purebred young hens and roosters of the value of $2 each.

The defendant's answer is a general denial as to all matters except plaintiff's ownership of the chickens. It is further alleged that if the plaintiff's chickens were killed the plaintiff was guilty of negligence and assumed the risk and damages resulting from his own failure to properly protect his poultry. The jury returned a verdict for $880 which was the total amount of damages claimed by the plaintiff. A judgment was entered on this verdict. The defendant moved for a new trial. His motion was denied. The defendant appeals from the judgment and from the trial court's order denying his motion for a new trial. The specifications of error upon which the defendant's motion was based fall into these general groups: one, insufficiency of the evidence to sustain the verdict; two, errors at law occurring at the trial; three, excessive damages given as a result of passion and prejudice of the jury.

■ The evidence when viewed in the light most favorable to the plaintiff, as it must be when its sufficiency is challenged, discloses the following facts. The plaintiff and his wife raised red Hampshire chickens which he describes as a special mating chicken valuable for the production of fertile eggs which are sold to a hatchery. In the spring of 1957 the plaintiff had about 300 mature hens. In May he purchased 500 chicks from a hatchery. During a period of time from May to along in August, 1957 350 chickens were killed. 180 mature hens were killed during the early part of the period and 170 young hens were killed during the latter part of July and in August. The young hens were birds that had been previously purchased as chicks. The plaintiff saw a black dog around his premises about once a week during the period over which the chickens were killed. Sometimes the dog was there in the morning near the chicken house. He actually saw this dog kill chickens two or three times. He saw the dog kill four or five chickens. He found anywhere from 2 or 3 chickens up to 55 or 60 that had been killed. These were the older hens. He examined many of the chickens as to the manner in which they had been killed. He said:

"They had teeth marks both sides of the body, portion of the teeth marks in front of the wing and the rest on the back part of the body."

He examined the chickens he actually saw killed and they bore the same marks as the ones that were found dead. The young hens were killed in the same manner.

The largest killing took place one night in August. The young hens were kept in a brooder house on which there was a screen door. There was a hole in the screen big enough for the black dog to go through. Over a hundred chickens had been killed. Some were lying inside and some outside the brooder house. On the side of the door

and on the screen were black curly hairs like those of the black dog. The wife of the plaintiff describes the scene thus:

"And he had gotten inside during the night and the floor was covered with chickens and the whole front yard, brooders were scattered all over the yard and we picked up chickens, injured chickens, some dead and some lived for quite some time.

"Q. Did you notice where they were wounded, these injured ones? A. Yes. They were all killed in the same manner with a bite over the back."

She called up the defendant that morning and told him that his dog was killing the chickens. The defendant came over to the Smith farm. She further testified:

"Well, Mr. Riedinger got out that morning, I was pretty well, pretty disgusted and I took him over and showed him this pile of chickens we had gathered up and he said he was sorry it happened but that it was just one of those things and that he would go down and see that the dog was killed."

He came back later that day and said he had killed the dog.

■ In his testimony the defendant denied that he owned the dog. He said it belonged to his grandchildren. However, it appears that the grandchildren had some time before moved away from the farm on which the dog was kept and that the defendant, who lived in Mandan, came out to the farm and fed and cared for the dog. On this appeal the defendant makes no issue of ownership or at least as to his responsibility for the damage done by the black dog. He challenges the sufficiency of the evidence by the contention that the proof is not sufficient to show that the dead chickens were killed by the black dog. It does appear that the black dog ran with two other dogs, one brown and one red. These dogs were seen at times with the black dog in the vicinity of plaintiff's buildings.

On one occasion the red dog was seen running through the farm yard and through a flock of chickens. There is no testimony that either the red dog or the brown dog was seen chasing or killing chickens. Neither is there any evidence that the red dog or the brown dog had ever shown tendencies to chase or injure livestock or poultry.

Larson v. Rustad, 66 N.D. 261, 264 N.W. 526, 529 involved the destruction of sheep by a dog allegedly belonging to the defendant. The killing of the sheep by that particular dog depended on circumstantial evidence the most vital of which was the presence of the dog at the scene of the killing. There was no evidence that anyone actually saw him kill a sheep. The defendant claimed that his wife was the owner of the dog but he ordered the dog destroyed. He was in control of the care of the dog and ordered him kept in the barn at night. This court said:

"We are of the opinion that when the evidence in this case is considered as a whole it cannot be said that the evidence is insufficient to sustain the verdict in any particular. In short, the evidence here is not such that reasonable men could draw only the one conclusion: (1) That the dog did not belong to the defendant; or (2) that the dog did not kill or injure the sheep."

In this case whether the defendant owned the black dog and whether the black dog killed the chickens were questions for the jury.

■■ The defendant has vigorously attacked the credibility of the plaintiff and his wife because in instituting the suit the plaintiff alleged that the defendant was the owner of and had control of three or more dogs and that his dogs killed the plaintiff's chickens.

After laying a foundation on cross-examination the defendant's counsel for purposes of impeachment introduced statements made by the plaintiff in a deposition

taken before trial pursuant to Rule 26, N.D. R.Civ.P. The deposition was not introduced in evidence at the trial. Only a few questions and answers were selected and introduced through the testimony of the court reporter who was called as a witness by the defendant. An example of these questions and answers is as follows:

"Q. What I want to know is, you claim here that it was the three (3) dogs, working separately and together, that killed the number of hens and roosters and chicks that you have set out in your complaint? A. Yes, sir."

In none of this examination does it appear that the plaintiff testified that he saw any dog other than the black one either chase or kill chickens. We cannot say that the testimony of the plaintiff and his wife to the effect that the black dog killed all of plaintiff's chickens that are the basis of this suit is incredible as a matter of law. This is clearly a case for the application of the rule that the credibility of witnesses and the probability of their stories are questions for the jury and not for the appellate court. Mikkelson v. Snider, 43 N.D. 416, 175 N.W. 220; Nimmins v. Forsberg, 70 N.D. 417, 294 N.W. 663, 665. In the latter case we said:

"the fact that the jury may have given credence to testimony which upon the face of the record appears improbable does not warrant the setting aside of the verdict by the Supreme Court."

In Town of Lowell v. Parker & Chamberlain, 97 Vt. 15, 121 A. 412, which was an action to recover damages for sheep killed by the defendant's dogs, it was held that evidence was inadmissible for the purpose of showing that other dogs had an opportunity to commit the injury in the absence of any showing that they were prone to kill or worry sheep or other animals.

■■■ The plaintiff testified that 180 mature hens were killed and were worth $3 each, that 170 young hens were killed and they were worth $2 each. The verdict was for $880 indicating that it was based upon the values testified to by the plaintiff. He was the owner of this property and as such was competent to testify as to the value. Imus v. Huber, N.D., 71 N.W.2d 339; Mevorah v. Goodman, N.D., 60 N.W. 2d 581; In re Heart River Irrigation District, 78 N.D. 302, 49 N.W.2d 217; McGilvra v. Minneapolis, St. P. & S. Ste. M. R. Co., 35 N.D. 275, 159 N.W. 854; Golly v. Northland Elevator Company, 53 N.D. 564, 207 N.W. 438; George v. Odenthal, 58 N.D. 209, 225 N.W. 323. A witness for the defendant testified to lesser values.

The defendant challenges the sufficiency of the evidence to support the verdict as to value and also argues that the verdict is so excessive in amount as to indicate passion and prejudice on the part of the jury. The evidence as to value is conflicting. We cannot agree with the assertion of the defendant that plaintiff's evidence as to value is incredible as a matter of law. It was within the province of the jury to determine which evidence to accept and which to reject. They chose to accept the values fixed by the plaintiff. It is not within the province of this court to disturb that determination.

■■ Before instructing the jury the court submitted to counsel the written instructions which he proposed to give to the jurors and asked for exceptions to be noted pursuant to Rule 51(c) N.D.R.Civ.P. Included in the instructions was the following:

"Members of the jury I charge you that under the law of this state any person may kill any dog or dogs kept as a domestic animal when he sees such dog or dogs in the act of killing, chasing, worrying, or damaging any poultry. But that the plaintiff is under no duty to destroy said dog.

"And, in this connection, I charge you that under the law of this State it is the duty of the person who is injured by the wrongful or negligent acts of another to exercise reasonable care and

diligence to avoid loss and to minimize or lessen the resulting damage, and that to the extent that his damages are the result of his active and unreasonable enhancement thereof or failure to exercise such care and diligence, he cannot recover."

Counsel for defendant objected to and asked that there be stricken from the proposed instructions this sentence:

"But that the plaintiff is under no duty to destroy said dog."

The court denied the request and gave the instructions as proposed. The defendant assigns the denial of this request and the giving of the instruction containing the challenged sentence as error. He argues that it was the duty of the plaintiff to protect his poultry against the recurring acts of the black dog and thereby minimize his damages.

In 15 Am.Jur., Damages, Sec. 40, it is said:

"Under the rule requiring one injured by the negligent or wrongful act or omission of another to use reasonable efforts to lessen the resulting damage, it is the duty of one whose property is injured or threatened with injury to take reasonable precautions and to make reasonable expenditures to guard against or minimize such injury; and if he fails to do so, he cannot recover damages for any injuries which by the exercise of reasonable care he could have avoided. In other words, the law will not allow one to sit idly by and see his property destroyed through forces negligently set in motion by another and then collect damages occasioned by his own failure to make reasonable exertion to arrest such disaster."

This statement is quoted in Nicola v. Meisner, N.D., 84 N.W.2d 702. The defendant argues that the challenged sentence is at variance with the law thus stated and is erroneous.

Under the provisions of Section 36-2110 NDRC 1943 any person may kill a dog that he sees in the act of killing, chasing or worrying or damaging livestock or poultry or discovers the animal under circumstances which satisfactorily show that he has recently been engaged in killing or chasing sheep. This statute, however, does not make it the duty of the owner of the livestock or poultry to kill the dog. As an abstract proposition the challenged sentence is correct. It is argued that the rule of mitigation of damages made it the duty of the plaintiff to kill the dog in order to protect his property from further damage. The weakness of this argument, however, lies in the fact that the record does not show that the plaintiff had an opportunity to kill the dog. The testimony of the plaintiff and his wife negatives such an opportunity. The plaintiff was cross-examined regarding this matter and testified as follows:

"Q. You, yourself, didn't shoot him? A. I tried a couple of times but I couldn't, no.

"Q. You didn't shoot him? A. I tried to but I didn't, no. * * *

"Q. Did you ask anybody else to shoot him for you? A. I told my hired man to keep an eye out for him but he was busy hauling grain too.

"Q. Did either one of you have a chance to kill that dog during this nine, ten days—A. No, sir."

The plaintiff's wife testified as follows:

"And what did your husband do, and you do, when you saw him kill that chicken, this black dog? A. Well, he went down the basement to get the gun and just as he was putting in the clip, the shell in the gun it made this click and the dog ran right off, just like that."

Thus the record shows that the plaintiff made an effort to shoot the dog but was unable to do so. Under these circumstances it appears it was not error for the court to

tell the jury that it was not the duty of the plaintiff to kill the dog.

■ The defendant predicates error on the action of the trial court in limiting the effect of evidence of the value of the purchase price of the chicks to impeachment and in advising the jury that it was not evidence of value. He relies on the generally accepted rule that where there is no market value, evidence of the original cost of personal property is admissible as bearing upon the value of that property. 20 Am.Jur., Evidence, Secs. 371 and 372; 32 C.J.S. Evidence § 1049a. According to the record this is what happened. The plaintiff was asked on cross-examination if on May 29, 1957 he did not buy 515 chicks for 15 cents each. Plaintiff's counsel objected, claiming that the purchase price was not a proper measure of damages. The court indicated that he agreed with the objection. In the midst of a bickering colloquy between the two counsel and the court the court said:

"That's the rule, alright. I think I will sustain the objection."

The discussion continued and after some time the court said to defendant's counsel:

"I am going to let you put that in but I am going to advise the jury that that is merely impeaching evidence, it isn't evidence of value."

To which defendant's counsel replied:

"I have no objection to that statement, your honor, I think that is true, it is what I am trying to present."

Plaintiff's counsel moved to strike the testimony under discussion. The court then said:

"Under the rule of the court, this was not used to establish value but merely to impeach the witness and, as I understand it, so I am going to overrule your objection."

After further immaterial remarks by counsel the court said:

"I want the jury to understand right now that this testimony of fifteen cents (15¢) apiece for the chickens is no evidence of value, it was merely a, merely an attempt on the part of Mr. Kelsch to discredit this witness, but it is not evidence of value."

It is about this limitation of the consideration of the evidence that the defendant's counsel now complains. He is not in a position to urge this point as error on appeal. He is estopped to do so by his acquiescence in the statement and agreement with the court. We add, however, that we doubt that error in limiting this evidence would be prejudicial in view of the fact that the cost of chicks at the hatchery would have little probative force in determining the value of these same chicks when they had become young hens some two months later.

■ The defendant predicates error on the refusal of the court to give this requested instruction:

"That I charge you as a matter of law that the burden is upon the plaintiff to prove his damages, if any he has sustained, by fair preponderance of the evidence, and that if you find that plaintiff has been damaged, you are not permitted to enter into the field of speculation and conjecture in awarding him compensation, but must be satisfied to a reasonable certainty as to the extent of his damages."

Instructions similar to the one requested have been approved with respect to the recovery of future physical suffering in personal injury actions (see Randell's Instructions to Juries, Sec. 348) and future damages for impaired earning capacity. 15 Am. Jur., Damages, Secs. 373 and 375; 25 C. J.S. Damages § 185c. In this case the issues with respect to the amount of damages were the amount of property destroyed and the value at the time of destruction. No future damages were involved. The jury was properly instructed with reference to the burden of proof and the general law of

damages. Under the facts in this case it was not error to refuse the requested instruction. The defendant has cited Wilson v. Oscar H. Kjorlie Co., 73 N.D. 134, 12 N.W.2d 526. That was a personal injury action. The defendant moved to strike certain testimony with reference to the loss of future earnings of plaintiff's business. We held that the plaintiff's testimony should have been stricken because proper preliminary facts were not shown, and said:

> "Under the facts disclosed by this record, we do not doubt but that the plaintiff suffered a loss to his business as the result of the injury. This however does not relieve him of proving his damages with reasonable certainty, nor does it permit the jury to enter the field of speculation and conjecture in awarding him compensation."

No requested instruction was involved. That decision does not support the defendant's contention that the court erred in refusing to give the requested instruction in this case.

 The only other specifications meriting attention on this appeal deal with remarks of plaintiff's counsel during the argument which the defendant claims were improper and prejudicial. The verbatim remarks were not made a part of this record. However it does show this:

> "(After Mr. Murray referred to the defendant as a rich man)
>
> "Mr. Kelsch: Wait a minute. I object. There is no evidence of any wealth on the part of Riedinger.
>
> "Mr. Murray: I can look him over.
>
> "Mr. Kelsch: It is still outside the record, your honor.

> "The Court: If the counsel misstated any evidence or lack of evidence, why the jury will disregard it. That is in either argument, by Mr. Kelsch or by Mr. Murray."

Later on this appears in the transcript:

> "(After Mr. Murray compared the demeanor of the defendant on the stand to that of Hoffa at the Congressional hearings:)
>
> "Mr. Kelsch: Wait a minute. Reference to Hoffa is nothing but an attempt to prejudice this jury by comparing this man with that kind of character. * * *
>
> "The Court: I will overrule the objection. * * *
>
> "The Court: It is an illustration, that's about all it amounts to."

Remarks of counsel that are made for the purpose of arousing sympathy or prejudice are improper. However, it is not every improper remark made by counsel during argument that requires reversal as being prejudicial. Lund v. Upham, 17 N.D. 210, 116 N.W. 88. The determination of whether or not misconduct of counsel is prejudicial rests primarily in the discretion of the trial court. Leach v. Nelson, 50 N.D. 538, 196 N.W. 755; Voegeli v. Schultz, 67 S.D. 538, 295 N.W. 493; Walker v. Penner, 190 Or. 542, 227 P.2d 316; Beebe v. Kleidon, 242 Minn. 521, 65 N.W.2d 614. The trial court did not err in denying the defendant a new trial on the misconduct of counsel.

The judgment and the order denying a new trial are affirmed.

SATHRE, C. J., and BURKE, J., concur.